Booth, J.,
delivered the opinion of the court:
This litigation is the result of a contract entered into between Swift & Co., a corporation organized under the laws of Illinois, and the Commissary-General of Subsistence of the Army.
The facts respecting each item of damage claimed will appear in connection with the discussion of the legal aspect thereof, and need not be here set forth in detail. The can- *422 tracts in suit embraced the procurement and shipment of chilled, frozen, or refrigerated fresh beef in such quantities as necessary to supply the army, and “ those destitute inhabitants of Cuba ” who were in immediate need thereof.
The first agreement bears the date of July 1, 1898, and by its express terms was capable of extension, and was subsequently extended to February 8, 1899. The second contract, bearing the date of February 23, 1899, was identical with the first and covered the performance of a similar service, both contracts being made part of the petition.
Finding IV. Clause 2 of the contract of July 1, 1898, provided for the care and refrigeration of the beef on board the steamships while en route to Cuba, the claimant agreeing at its own expense to erect and equip on board said vessels all such refrigerating apparatus, machines, and fittings as might be necessary to carry the same to its destination. In compliance with this agreement all the necessary equipment was provided by the claimant, its refrigerators being installed on board each vessel designated by the defendants. Clause 4 of the contract provided that all refrigerators, machines, and fittings so provided by the claimant should remain its own property. Subsequent to the contract period all this property previously installed aboard the government steamships was not removed from said vessels, no demand made therefor by the claimant, and nothing whatever done toward repossessing it, as the contract provided. Claim is now made for its value, predicating the same upon an alleged taking by the defendants of this property for its own use. The contention is without merit. In the absence of any specific provision to the contrary, the claimant’s duty to remove the property so affixed to the vessel obtained. Claimant not having availed itself of this privilege during the existence of the contract, or within a reasonable time thereafter, and no intervention upon the part of the defendants to prevent it from so doing, removes all just ground for complaint. In fact, the proof shows that the cost of removal would have exceeded the value of the property removed, and is quite persuasive that abandonment of the same was clearly intended.
Finding V. Clause 2 of the contract provided for the erection and operation by the claimant of refrigerator buildings *423 at such, ports of Cuba occupied by the army as may be necessary for carrying out the same. It likewise provided that claimant should at its own expense move said buildings from point to point on the seacoast as may be necessary for the support of the moving troops. Under the above provision the defendants required the claimant to construct refrigerators at Gibara and Nuevitas. They were never utilized, however, and the Nuevitas plant was subsequently sold by claimant for $1,400, and the Gibara plant removed under orders to Cienfuegos. The breach complained of is the requirement of an unnecessary expenditure of a large sum of money in the erection of these two plants. An obligation to perform a particular service necessary to the consummation of a greater object, and upon which the latter depends for fulfillment, incurs liability sometimes quite difficult to determine. The scope of the undertaking, the circumstances under which the agreement is entered into, and the general purposes and object of the contract are all indispensable in determining what is and what is not necessary. McCulloch v. Maryland, 4 Wheat., 316. Claimant contracted to furnish chilled, refrigerated beef to a “ moving army ” engaged in hostilities. As a part of the undertaking, and indispensable thereto, it not only agreed to erect refrigerators at necessary ports for that purpose, but further stipulated to move such buildings so erected to seacoast points to meet the emergency of changed locations. Under the circumstances it was difficult and quite impossible to anticipate with exactness the necessity for location at one point or another. Use of the buildings so erected could not determine the necessity therefor, as was well suggested in defendants’ brief: “Suppose that after claimant had gone to the expense of erecting refrigerators at Santiago, Matanzas, and other seacoast points in Cuba * * * the army had been withdrawn from Cuba, would damages accrue because some one or more of these plants had not been used?” It is neither alleged nor proven that the erection of the refrigerators at the two ports mentioned might not have been necessary; or that by reasonable diligence and inquiry such a fact could have been anticipated. The good faith of the army officers in charge is not challenged. That their erection *424 was unnecessary was the result of subsequent events, determinable only by the emergencies of war, and in the absence of any exercise of arbitrary authority or such reckless disregard of claimant’s rights as deprives the transaction of reasonableness under the contract, the item is not recoverable, including the removal of the Gibara plant.
Finding VI. Fails for insufficient proof. The court can not allow or consider the allowance of a claim for shortage upon the simple statement of a witness that the claimant sustained a loss of $189.68 because of a difference in weight between place of shipment and destination. No details are furnished upon which such a conclusion can be predicated.
Finding VII. Claimant’s contention under this item is for loss by reason of delay in shipment, occasioned by a deviation from the contract in consigning the cargo of the ship first to Porto Eico and subsequently to Cuba. The contract did not contemplate shipments to Porto Eico, and claimant was not in a position to properly care for and distribute its beef at. the latter place. The service required of claimant in this instance was in most respects foreign to the original undertaking and the voyage prolonged to such an extent that it can hardly be said to come within the contract, although a portion of the cargo was finally delivered at Cuba. The defendants had no authority under the contract to exact of claimant continuance of refrigeration beyond the time mentioned in the contract. That the preservation of the beef was of prime importance is evidenced by the language of the contract, and claimant was only obligated to perfect and continue such precautionary measures as would preserve the cargo in transitu from the United States to Cuba and seventy-two hours after being issued from the ship’s refrigerators and twenty-four hours after issue from the port refrigerators. This was not a loss from the perils of the sea as contemplated by the contract. Additional burdens were imposed upon the contractors not embraced within the original contract, which resulted in loss because of the unusual time consumed in the voyage, the cargo being largely, if not wholly, composed of mutton, a meat more difficult to preserve by refrigeration.
*425 Finding VIII. Both these items will be disallowed. The proof is insufficient. Claimant seeks to establish a loss of beef by the introduction of invoices showing the quantities of beef transported from its plant in Chicago for shipment upon the vessel, and the quantities subsequently paid for at the point of disembarkation. It is not disputed that claimant received payment for full amount of beef shown by receipt of quartermaster on board the vessel. The invoices so relied upon are not conclusive; they are ex parte, and in the absence of corroborative testimony fall short of furnishing the preponderance necessary to establish a loss. The contract obligated the claimant to deliver the beef desired at points on the seacoast of Cuba occupied by the United States Army; the means of transportation, it is true, was furnished by the Government, but, in the absence of more specific proof in respect to the alleged loss, liability can not attach because of this clause in the contract. Whether it was occasioned by delay, the perils of the sea, shrinkage, or theft are all left to conjecture, contingencies entirely too uncertain and remote upon which to predicate a judgment.
! Finding IX. We think this item clearly allowable. The duty exacted from claimant in the first instance was properly levied and collected. If the defendants subsequently accept from claimant in fulfillment of the original contract a large portion of this beef upon which the duty, had been paid, they should be reimbursed. The contract price as stipulated in the agreement was intended to be net and deductions therefrom were only allowable in the way prescribed in the instrument itself.
Finding X. The loss here claimed for is not allowable. The expense incurred comes within the terms of the contract and was a part of the duties claimant was obligated to perform by its express terms.
Finding XI. The amount claimed in this finding is allowable, defendants conceding liability therefor.
Under the second contract a number of claims similar in most respects to those heretofore discussed are insisted upon by the claimant. Is is unnecessary to consider them in detail as they in most instances involve similar questions of fact *426 and have been fully covered in the findings. All except the amounts stated in Findings YII, IX, XI, XVI, and XYII have been disallowed.
Judgment will be awarded to claimant in the sum of $6,059.94.